## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **Criminal No. 06-368 (RJL/DAR)** |
| ) | |
| **JAMES A. AUSTIN,** ) | |
| ) | |
| **Defendant.** ) | |

## DEFENDANT'S NOTICE OF AUTHORITY

Defendant, James A. Austin, through undersigned counsel, respectfully submits this Notice of Authority, attaching the recently decided appellate case *United States v. Hernandez-Vasquez*, –F.3d-- 2007 WL 3171422 *opinion modified on reh'g by* –F.3d– 2008 WL 170201 (9th Cir., Jan. 22, 2008).

In *Hernandez-Vasquez*, the Ninth Circuit addressed several issues in connection with government requests to involuntarily medicate an individual under *Sell v. United States*, 539 U.S. 166 (2003).[1]  On an issue directly relevant to Mr. Austin's case, the Ninth Circuit considered what a district court should evaluate in determining the strength of the government's interest in forcibly medicating an individual.  The court held that "courts must consider the facts of individual cases in evaluating the government's interest in prosecution.  Such relevant circumstances include the time a defendant has served while awaiting trial and the possibility of future civil confinement."

---

[1]  The court first addressed the "threshold question" of "[w]hether the district court had an obligation to apply [*Washington v. Harper*, 494 U.S. 210 (1990)] and make a dangerousness inquiry before proceeding under *Sell*."  The court held that because *Sell* hearings are "disfavored," the lower court should usually make such a *Harper* inquiry first.  In this case, the psychiatric staff conducted a *Harper* hearing and concluded that Mr. Austin could not be forcibly medicated for "dangerousness."  The defense accepts this determination and the government has not sought to medicate Mr. Austin under the *Harper* criteria.

*Id.* at *8.  In addition, the court held that "[a]lthough the sentencing guidelines no longer are mandatory, they are the best available predictor of the length of a defendant's incarceration. . . . Accordingly, we . . . conclude that the likely guideline range is the appropriate starting point for the analysis of a crime's seriousness."  *Id.*

Thus, in accordance with *Hernandez-Vasquez*, several circumstances the Court should consider in determining the strength of the government's interest in forcibly medicating Mr. Austin are:  (1) the length of time Mr. Austin has been in pretrial confinement; (2) the possibility of future civil confinement for Mr. Austin; and (3) the likely guidelines range Mr. Austin is facing if convicted in this case.

Respectfully submitted,

A.J. KRAMER

Federal Public Defender


_____/s/_____
Jonathan S. Jeffress
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Ste 550
Washington, D.C.  20004
(202) 208-7500, ex. 134

Westlaw.

--- F.3d ----
--- F.3d ----, 2008 WL 170201 (C.A.9 (Cal.))
(Cite as: --- F.3d ----)

**H**
U.S. v. Hernandez-Vasquez
C.A.9 (Cal.),2008.
Only the Westlaw citation is currently available.
United States Court of Appeals,Ninth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose HERNANDEZ-VASQUEZ, Defendant-Appellant.
**No. 06-50198.**

Argued and Submitted May 15, 2007.
Filed Oct. 31, 2007.
Amended Jan. 22, 2008.

**Background:** Defendant was charged with being previously-deported alien found in United States. Following determination that defendant was incompetent, the United States District Court for the Southern District of California, Dana M. Sabraw, J., granted government's motion to medicate defendant involuntarily. Defendant appealed.

**Holdings:** The Court of Appeals, Fogel, District Judge, sitting by designation, held that:

(1) District Court did not err in proceeding directly to *Sell* inquiry without making any findings regarding availability or appropriateness of other means forcibly to medicate defendant;

(2) District Court failed to provide appropriate limitations in its *Sell* order; and

(3) likely Sentencing Guideline range was appropriate starting point for analysis of crime's seriousness, but was not only factor that should be considered.

Vacated and remanded.

Opinion, 506 F.3d 811, amended and superseded on denial of rehearing.

**[1] Constitutional Law 92 ⬅➔4785**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(H) Criminal Law
            92XXVII(H)9 Disadvantaged Persons
                92k4781 Incompetency or Mental Illness
                    92k4785 k. Administration of Drugs. Most Cited Cases
For the Due Process Clause to permit the Government involuntarily to administer antipsychotic drugs to render a defendant competent to stand trial, first, the court must find that important governmental interests are at stake; second, the court must conclude that involuntary medication will significantly further those concomitant state interests; third, the court must conclude that involuntary medication is necessary to further those interests; and, fourth, the court must find that administration of the drugs is medically appropriate, that is, in the patient's best medical interest in light of his medical condition. U.S.C.A. Const.Amend. 5.

**[2] Constitutional Law 92 ⬅➔4785**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(H) Criminal Law
            92XXVII(H)9 Disadvantaged Persons
                92k4781 Incompetency or Mental Illness
                    92k4785 k. Administration of Drugs. Most Cited Cases
For involuntary medication to significantly further state interests, as required for the Due Process Clause to permit the Government involuntarily to administer antipsychotic drugs to render a defendant competent to stand trial, a court must find that the administration of the drugs is substantially likely to render the defendant competent to stand trial, and substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense. U.S.C.A. Const.Amend. 5.

**[3] Constitutional Law 92 ⬅➔4785**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

92 Constitutional Law
    92XXVII Due Process
      92XXVII(H) Criminal Law
        92XXVII(H)9 Disadvantaged Persons
          92k4781 Incompetency or Mental Illness
            92k4785 k. Administration of Drugs. Most Cited Cases
For involuntary medication to be necessary to further government interests, as required for the Due Process Clause to permit the Government involuntarily to administer antipsychotic drugs to render a defendant competent to stand trial, it must be shown that any alternative, less intrusive methods are unlikely to achieve substantially the same results, and the court must consider less intrusive means for administering the drugs, such as a court order backed by the contempt power. U.S.C.A. Const.Amend. 5.

**[4] Mental Health 257A ⬅436.1**

257A Mental Health
    257AIV Disabilities and Privileges of Mentally Disordered Persons
      257AIV(E) Crimes
        257Ak436 Custody and Confinement
          257Ak436.1 k. In General. Most Cited Cases
Because *Sell* orders authorizing the Government involuntarily to administer antipsychotic drugs to render a defendant competent to stand trial are disfavored, a district court, in an ordinary case, should refrain from proceeding with the *Sell* inquiry before examining dangerousness and other bases to administer medication forcibly.

**[5] Mental Health 257A ⬅436.1**

257A Mental Health
    257AIV Disabilities and Privileges of Mentally Disordered Persons
      257AIV(E) Crimes
        257Ak436 Custody and Confinement
          257Ak436.1 k. In General. Most Cited Cases
Prior to undertaking the *Sell* inquiry into whether to

authorize the Government involuntarily to administer antipsychotic drugs to render a defendant competent to stand trial, a district court ordinarily should make a specific determination on the record that no other basis for forcibly administering medication is reasonably available.

**[6] Mental Health 257A ⬅436.1**

257A Mental Health
    257AIV Disabilities and Privileges of Mentally Disordered Persons
      257AIV(E) Crimes
        257Ak436 Custody and Confinement
          257Ak436.1 k. In General. Most Cited Cases
If a district court, prior to undertaking the *Sell* inquiry into whether to authorize the Government involuntarily to administer antipsychotic drugs to render a defendant competent to stand trial, does not conduct a dangerousness inquiry under *Harper,* it should state for the record why it is not doing so.

**[7] Mental Health 257A ⬅436.1**

257A Mental Health
    257AIV Disabilities and Privileges of Mentally Disordered Persons
      257AIV(E) Crimes
        257Ak436 Custody and Confinement
          257Ak436.1 k. In General. Most Cited Cases
District court did not err in honoring parties' agreement to proceed directly to *Sell* inquiry into whether Government could involuntarily administer antipsychotic drugs to render defendant competent to stand trial, without making any findings regarding availability or appropriateness of other means forcibly to medicate defendant, such as on dangerousness grounds, where Government had made clear that it did not intend to seek involuntary medication on dangerousness grounds.

**[8] Mental Health 257A ⬅436.1**

257A Mental Health
    257AIV Disabilities and Privileges of Mentally Disordered Persons

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 170201 (C.A.9 (Cal.))
**(Cite as: --- F.3d ----)**

257AIV(E) Crimes
257Ak436 Custody and Confinement
257Ak436.1 k. In General. Most Cited Cases
*Sell* inquiries into whether the Government should be authorized involuntarily to administer anti-psychotic drugs to render a defendant competent to stand trial are disfavored in part because the medical opinions required for a *Sell* order are more multifaceted, and thus more subject to error, than those required for a *Harper* analysis of whether a defendant should be medicated due to dangerousness.

**[9] Criminal Law 110 ☞1139**

110 Criminal Law
110XXIV Review
110XXIV(L) Scope of Review in General
110k1139 k. Additional Proofs and Trial De Novo. Most Cited Cases

**Criminal Law 110 ☞1158(1)**

110 Criminal Law
110XXIV Review
110XXIV(O) Questions of Fact and Findings
110k1158 In General
110k1158(1) k. In General. Most Cited Cases
The first *Sell* factor for determining whether the Government can involuntarily administer antipsychotic drugs to render a defendant competent to stand trial, namely the seriousness of the underlying crime, is a legal question subject to de novo review, while the other three *Sell* factors are factual questions that should be reviewed for clear error.

**[10] Mental Health 257A ☞436.1**

257A Mental Health
257AIV Disabilities and Privileges of Mentally Disordered Persons
257AIV(E) Crimes
257Ak436 Custody and Confinement
257Ak436.1 k. In General. Most Cited Cases
At a minimum, a *Sell* order authorizing the Government involuntarily to administer antipsychotic

drugs to render a defendant competent to stand trial must identify: (1) the specific medication or range of medications that the treating physicians are permitted to use in their treatment of the defendant; (2) the maximum dosages that may be administered; and (3) the duration of time that involuntary treatment of the defendant may continue before the treating physicians must report back to the court on the defendant's mental condition and progress.

**[11] Mental Health 257A ☞436.1**

257A Mental Health
257AIV Disabilities and Privileges of Mentally Disordered Persons
257AIV(E) Crimes
257Ak436 Custody and Confinement
257Ak436.1 k. In General. Most Cited Cases
District court failed to provide appropriate limitations in its *Sell* order authorizing Government involuntarily to administer antipsychotic drugs to render defendant competent to stand trial, even though court stated during hearing that it expected Government to pursue agreed-upon course of treatment, and even though order required physicians to report back to court, where written order provided only that method of treatment and type of medication would be at discretion of treating medical professionals within Bureau of Prisons.

**[12] Mental Health 257A ☞436.1**

257A Mental Health
257AIV Disabilities and Privileges of Mentally Disordered Persons
257AIV(E) Crimes
257Ak436 Custody and Confinement
257Ak436.1 k. In General. Most Cited Cases

**Sentencing and Punishment 350H ☞651**

350H Sentencing and Punishment
350HIV Sentencing Guidelines
350HIV(A) In General
350Hk651 k. Operation and Effect of Guidelines in General. Most Cited Cases

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 170201 (C.A.9 (Cal.))
(Cite as: --- F.3d ----)

The likely Sentencing Guideline range is the appropriate starting point for the analysis of a crime's seriousness, for purposes of determining whether the Government can involuntarily administer antipsychotic drugs to render a defendant competent to stand trial, but it is not the only factor that should be considered, and, because the Guidelines do not reflect the full universe of relevant circumstances, two indictments alleging crimes with equal likely Guideline ranges will not always be equally serious for such purposes.

**[13] Mental Health 257A ☜436.1**

257A Mental Health
   257AIV Disabilities and Privileges of Mentally Disordered Persons
      257AIV(E) Crimes
         257Ak436 Custody and Confinement
            257Ak436.1 k. In General. Most Cited Cases
At least under some circumstances, a violation of the statute imposing criminal penalties for being a previously-deported alien found in the United States may constitute a serious crime sufficient to justify involuntary medication to render a defendant competent to stand trial. Immigration and Nationality Act, § 276, 8 U.S.C.A. § 1326.

**[14] Mental Health 257A ☜436.1**

257A Mental Health
   257AIV Disabilities and Privileges of Mentally Disordered Persons
      257AIV(E) Crimes
         257Ak436 Custody and Confinement
            257Ak436.1 k. In General. Most Cited Cases
In deciding whether to issue *Sell* order authorizing Government involuntarily to administer antipsychotic drugs to render defendant competent to stand trial, district court would be required to remain mindful of distinction between purposes and requirements of involuntary medication to restore competency and involuntary medication to reduce dangerousness, thus taking care to separate *Sell* inquiry from *Harper* dangerousness inquiry and not allowing such inquiries to collapse into each other.

Robert A. Garcia, San Diego, CA, counsel for appellant.
Carol C. Lam, U.S. Attorney, Bruce M. Castetter and Neville S. Hedley (argued), Assistant U.S. Attorneys, San Diego, CA, for appellee.

Appeal from the United States District Court for the Southern District of California; Dana M. Sabraw, District Judge, Presiding. D.C. No. CR-04-0180 DMS.

Before RAYMOND C. FISHER and RICHARD R. CLIFTON, Circuit Judges, and JEREMY FOGEL,FN* District Judge.

ORDER AMENDING OPINION AND DENYING PETITION FOR PANEL REHEARING AND AMENDED OPINION

**ORDER**

*1 The opinion filed on October 31, 2007 and published at slip opinion 14310-14325, 819 F.3d 811 (9th Cir.2007) is AMENDED as follows:

Replace the third full paragraph on page 819 with the following:

Accordingly, we hold that a *Sell* order must provide at least some limitations on the medications that may be administered and the maximum dosages and duration of treatment. At a minimum, to pass muster under *Sell,* the district court's order must identify: (1) the specific medication or range of medications that the treating physicians are permitted to use in their treatment of the defendant, (2) the maximum dosages that may be administered, and (3) the duration of time that involuntary treatment of the defendant may continue before the treating physicians are required to report back to the court on the defendant's mental condition and progress. We stress that while the court may not simply delegate unrestricted authority to physicians, the restrictions it does impose should be broad enough to give physicians a reasonable degree of flexibility in responding to changes in the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 170201 (C.A.9 (Cal.))
(Cite as: --- F.3d ----)

defendant's condition. Moreover, the Government or the defendant may move to alter the court's order as the circumstances change and more becomes known about the defendant's response to the medication.

With this amendment the panel has voted unanimously to deny the government's petition for panel rehearing.

IT IS SO ORDERED.

**OPINION**

FOGEL, District Judge:

Defendant-Appellant Jose Hernandez-Vasquez appeals the order of the district court permitting Appellee, the United States ("the Government"), to medicate him involuntarily to render him competent for trial. We vacate and remand.

**BACKGROUND**

Defendant was indicted on January 28, 2004 as a previously-deported alien found in the United States in violation of 8 U.S.C. § 1326.[FN1]Defendant is subject to a maximum prison term of twenty years, and the Government calculates his likely sentencing range under the advisory sentencing guidelines as 92-115 months. On May 6, 2004, Defendant moved for a competency examination. On September 17, 2004, the district court found Defendant incompetent to stand trial and committed him to the custody of the Attorney General pursuant to 18 U.S.C. § 4241. Defendant subsequently was transferred to the United States Medical Center for Federal Prisoners in Springfield, Missouri.

On March 3, 2006, the Government requested an evidentiary hearing on its motion to medicate Defendant involuntarily to render him competent to stand trial. Alternatively, the Government requested an order directing the Medical Center to evaluate Defendant for dangerousness. At a hearing held on March 24, 2006, the district court granted the motion to medicate Defendant involuntarily. The district court issued a written order to that effect on

March 29, 2006, and Defendant timely appealed. On April 5, 2006, a motions panel of this Court stayed the involuntary medication order pending the outcome of this appeal. Consequently, Defendant has not yet been medicated pursuant to the terms of the district court's order.

**DISCUSSION**

*2 The parties agree that *Sell v. United States,* 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003), governs the instant dispute. In that case, the United States moved to medicate a criminal defendant involuntarily in order to restore his competency for trial. On appeal from the trial court's order granting the Government's motion, which the Eighth Circuit had affirmed, the Supreme Court considered "whether the Constitution permits the Government to administer antipsychotic drugs involuntarily to a mentally ill criminal defendant-in order to render that defendant competent to stand trial for serious, but nonviolent, crimes."*Sell,* 539 U.S. at 169. The Court concluded that the Constitution allows the Government to do so "in limited circumstances." *Id.*

The Supreme Court began its analysis in *Sell* by reviewing its earlier decisions in *Washington v. Harper,* 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990), and *Riggins v. Nevada,* 504 U.S. 127, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992). In *Harper,* the Supreme Court recognized that an individual has a significant liberty interest under the Due Process Clause of the Fourteenth Amendment in avoiding the unwanted administration of antipsychotic drugs.*Harper,* 494 U.S. at 221-22. The Court concluded, however, that a state's interest in administering medication to a dangerous inmate is legitimate and important, *id.* at 225-26, and held that the Due Process Clause allows a state "to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest."*Id.* at 227.In *Riggins,* the Supreme Court overturned an order permitting involuntary medication to render a defend-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 170201 (C.A.9 (Cal.))
**(Cite as: --- F.3d ----)**

ant competent for trial on the basis that the district court "did not acknowledge the defendant's liberty interest in freedom from unwanted antipsychotic drugs."504 U.S. at 137. It concluded that" [t]his error may well have impaired ... constitutionally protected trial rights," by affecting the defendant's demeanor, testimony, ability to follow proceedings, and communications with counsel. *Id.* *Sell* synthesized these two decisions as follows:

*Harper* and *Riggins* [ ] indicate that the Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests.

This standard will permit involuntary administration of drugs solely for trial competence purposes in certain instances. But those instances may be rare. That is because the standard says or fairly implies [that the trial court must make four findings.]

*Sell,* 539 U.S. at 179-80.

*3 [1] First, the court must find that "*important* governmental interests are at stake." *Id.* at 180 (emphasis in original).

The Government's interest in bringing to trial an individual accused of a serious crime is important. That is so whether the offense is a serious crime against the person or a serious crime against property. In both instances the Government seeks to protect through application of the criminal law the basic need for security.

Courts, however, must consider the facts of the individual case in evaluating the Government's interest in prosecution. Special circumstances may lessen the importance of that interest.... The potential for future [civil] confinement affects, but does not totally undermine, the strength of the need for prosecution. The same is true of the possibility that the defendant has already been confined for a signi-

ficant amount of time (for which he would receive credit toward any sentence ultimately imposed, see 18 U.S.C. § 3585(b)). Moreover, the Government has a concomitant, constitutionally essential interest in assuring that the defendant's trial is a fair one.

*Id.* (internal citations omitted).

[2]"Second, the court must conclude that involuntary medication will *significantly further* those concomitant state interests."*Id.* at 181 (emphasis in original). Specifically, the court must find that "the administration of the drugs is substantially likely to render the defendant competent to stand trial" and "substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense."*Id.*

[3]"Third, the court must conclude that involuntary medication is *necessary* to further those interests."*Id.* (emphasis in original). It must be shown that any alternative, less intrusive methods are unlikely to achieve substantially the same results; and the court must consider less intrusive means for administering the drugs, such as a court order "backed by the contempt power." *Id* .

Finally, the court must find that "administration of the drugs is *medically appropriate, i.e.,* in the patient's best medical interest in light of his medical condition."*Id.* (emphasis in original).

After identifying these four required findings, the Supreme Court stressed that a *Sell* inquiry is independent of the procedure that allows involuntary medication of dangerous inmates under *Harper.*In fact, the Court stated explicitly that consideration of an involuntary medication order based on dangerousness is preferable to consideration of an order intended to render a defendant competent for trial:

A court need not consider whether to allow forced medication [to render a defendant competent for trial], if forced medication is warranted for a *different* purpose, such as the purposes set out in *Harper* related to the individual's dangerousness, or purposes related to the individual's own interests

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

where refusal to take drugs puts his health gravely at risk. There are often strong reasons for a court to determine whether forced administration of drugs can be justified on these alternative grounds *before* turning to the trial competence question.

*4 For one thing, the inquiry into whether medication is permissible, say, to render an individual non-dangerous is usually more "objective and manageable" than the inquiry into whether medication is permissible to render a defendant competent. The medical experts may find it easier to provide an informed opinion about whether, given the risk of side effects, particular drugs are medically appropriate and necessary to control a patient's potentially dangerous behavior (or to avoid serious harm to the patient himself) than to try to balance harms and benefits related to the more quintessentially legal questions of trial fairness and competence.

For another thing, courts typically address involuntary medical treatment as a civil matter, and justify it on these alternative, *Harper*-type grounds....

... Even if a court decides medication cannot be authorized on the alternative grounds, the findings underlying such a decision will help to inform expert opinion and judicial decisionmaking in respect to a request to administer drugs for trial competence purposes.... We consequently believe that a court, asked to approve forced administration of drugs for purposes of rendering a defendant competent to stand trial, should ordinarily determine whether the Government seeks, or has first sought, permission for forced administration of drugs on these other *Harper*-type grounds; and, if not, why not.

*Id.* at 181-83 (internal citations omitted)(emphasis in original). In remanding the case to the district court, the *Sell* Court noted that the Government could pursue multiple grounds for forced medication on remand, "including the danger *Sell* poses to himself or others."*Id.* at 186.

Because certain aspects of *Sell* are particularly relevant to the instant appeal, we discuss them in depth below and apply them to the instant case. But before we do, we must address a threshold ques-

tion: Whether the district court had an obligation to apply *Harper* and make a dangerousness inquiry before proceeding under *Sell.*

**I**

[4][5][6] As we have held previously, "[t]he Supreme Court clearly intends courts to explore other procedures, such as *Harper* hearings (which are to be employed in the case of dangerousness) before considering involuntary medication orders under *Sell*."*United States v. Rivera-Guerrero*, 426 F.3d 1130, 1137 (9th Cir.2005). Because *Sell* orders are "disfavored," *id.,* the district court, in an ordinary case, should refrain from proceeding with the *Sell* inquiry before examining dangerousness and other bases to administer medication forcibly. Accordingly, prior to undertaking the *Sell* inquiry, a district court should make a specific determination on the record that no other basis for forcibly administering medication is reasonably available. If a district court does not conduct a dangerousness inquiry under *Harper*, it should state for the record why it is not doing so.[FN2]

*5 [7] At the hearing in this case, the district court undertook the *Sell* inquiry without making any findings regarding the availability or appropriateness of other means forcibly to medicate Defendant. It did so, however, only after the Government had made clear that it did not intend to seek involuntary medication on dangerousness grounds, a position that it has reiterated on this appeal. As it emphasized in its brief to this Court: "Although the Government offered evidence of [Defendant's] potential danger to others while in custody, [it] did not seek to have [Defendant] forcibly medicated based on dangerousness, and Dr. Wolfson shied away from [Defendant's] dangerous conduct while in custody as a basis for forcibly medicating him."[Red Br. 21]

[8] Because the Government disclaimed any opportunity to make a showing of dangerousness under *Harper*, we cannot fault the district court for honoring the parties' agreement to proceed directly to the *Sell* inquiry. We emphasize, however, that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Sell* inquiries are disfavored in part because the medical opinions required for a *Sell* order are more multi-faceted, and thus more subject to error, than those required for a *Harper* analysis. *See Sell,* 539 U.S. at 182 ("For one thing, the inquiry into whether medication is permissible, say, to render an individual nondangerous is usually more objective and manageable than the inquiry into whether medication is permissible to render a defendant competent."). A defendant's liberty interest in avoiding unnecessary involuntary medication is too important to allow for situations in which the Court is asked to undertake the more error-prone analysis for what may be arbitrary or tactical reasons. Because we vacate the district court's order on other grounds, on remand the district court may wish to inquire further as to the Government's reasons for not seeking involuntary medication on the basis of dangerousness, and should note for the record its reasons for not proceeding under *Harper,* before undertaking the *Sell* inquiry.[FN3]

**II**

We now move to the district court's application of the *Sell* factors. Neither the Supreme Court nor this circuit has specified the standard of review applicable to a *Sell* order. Two of our sister circuits, however, have passed on this question. In *United States v. Gomes,* 387 F.3d 157 (2d Cir.2004), the Second Circuit held that the first *Sell* factor-the seriousness of the underlying crime-is a legal question subject to *de novo* review, and that the remaining *Sell* factors are factual questions that should be reviewed for clear error. *Id.* at 160.The Tenth Circuit, in *United States v. Bradley,* 417 F.3d 1107 (10th Cir.2005), held that both the first and second *Sell* factors are legal questions that should be reviewed *de novo. See id.* at 1113.

[9] We agree with the Second Circuit. While the importance of an asserted governmental interest is an issue that this Court is well-equipped to review and evaluate for itself in the first instance, the question of whether medicating a particular defendant involuntarily would "significantly further" the

asserted governmental interests at stake typically involves substantial questions of fact. Resolution of such questions is best left to the district court and must be accorded deference on appeal. Accordingly, we follow the Second Circuit's approach and review the district court's determinations with regard to the first *Sell* factor *de novo,* and the remaining *Sell* factors for clear error. *See Gomes,* 387 F.3d at 160.

**III**

*6 *Sell* does not identify a requisite degree of specificity concerning the drugs to be used for involuntary medication. However, it does imply that a court should consider these issues at a detailed level: "The specific kinds of drugs at issue may matter here as elsewhere. Different kinds of antipsychotic drugs may produce different side effects and enjoy different levels of success ."*Id.* at 181;*see also Rivera-Guerrero,* 426 F.3d at 1140 (discussing *Sell* and stating that "[s]pecificity as to the medications to be administered is critical"); *id.* at 1142 (stating that the court must develop a record that gives "attention to the type of drugs proposed, their dosage, and the expected duration of a person's exposure") (citation omitted).

*Sell's* discussion of specificity would have little meaning if a district court were required to consider specific drugs at a *Sell* hearing but then could grant the Bureau of Prisons unfettered discretion in its medication of a defendant. While *Sell* appropriately does not direct district courts to micromanage the decisions of medical professionals, reading it as imposing no limits upon the discretion of the treating physicians would render judicial inquiry about specific drugs academic. A broad grant of discretion to medical professionals also risks distracting such professionals from *Sell's* narrow purpose of restoring a defendant's competency for trial. *See Sell,* 539 U.S. at 185 ("The failure to focus upon trial competence could well have mattered. Whether a particular drug will tend to sedate a defendant, interfere with communication with counsel, prevent rapid reaction to trial developments, or diminish the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ability to express emotions are matters important in determining the permissibility of medication to restore competence, but not necessarily relevant when dangerousness is primarily at issue.") (internal citation omitted).

*Sell* appears to anticipate physicians' resistance to specific judicial direction regarding treatments that are acceptable for the purpose of rendering a defendant competent to stand trial:

The medical experts may find it easier to provide an informed opinion about whether, given the risk of side effects, particular drugs are medically appropriate and necessary to control a patient's potentially dangerous behavior (or to avoid serious harm to the patient himself) than to try to balance harms and benefits related to the more quintessentially legal questions of trial fairness and competence.

*Id.* at 182.The Court noted the "strong reasons" that often exist for justifying forced medication on other grounds, *id.,* and observed that instances in which an order for involuntary medication would be appropriate under *Sell* "may be rare." *Id.* at 180.Read together, these statements indicate that the proper approach to physicians' understandable chafing under the particularized judicial direction required by *Sell* is not to grant physicians unlimited discretion in their efforts to restore a defendant to competency for trial but rather, if the facts warrant, to find another legal basis for involuntary medication.

*7 [10] Accordingly, we hold that a *Sell* order must provide at least some limitations on the medications that may be administered and the maximum dosages and duration of treatment. At a minimum, to pass muster under *Sell,* the district court's order must identify: (1) the specific medication or range of medications that the treating physicians are permitted to use in their treatment of the defendant, (2) the maximum dosages that may be administered, and (3) the duration of time that involuntary treatment of the defendant may continue before the treating physicians are required to report back to the court on the defendant's mental condi-

tion and progress. We stress that while the court may not simply delegate unrestricted authority to physicians, the restrictions it does impose should be broad enough to give physicians a reasonable degree of flexibility in responding to changes in the defendant's condition. Moreover, the Government or the defendant may move to alter the court's order as the circumstances change and more becomes known about the defendant's response to the medication.

[11] Turning to the facts of this case, we note that the order at issue provides only that "[t]he method of treatment and type of medication to be used shall be at the discretion of the treating medical professionals within the Bureau of Prisons."While the record reflects that during the *Sell* hearing the district court stated its expectation that the Government would pursue an agreed-upon course of treatment,[FN4] the court's written order does not limit meaningfully the discretion delegated to the Government's physicians. The fact that the order requires the physicians to report back to the Court, while appropriate, is insufficient. While *Sell* does not require that a court micromanage all aspects of a defendant's treatment, nor does it allow such non-specific delegation of authority as to a treatment plan. Accordingly, we vacate and re-mand.

## IV

Because we vacate the district court's order for lack of the requisite specificity, we need not reach Defendant's argument that the Government's interest in prosecuting him under § 1326 was insufficient to justify involuntary medication. *See Sell,* 539 U .S. at 180. However, because the issue is likely to arise on remand, we offer some guidance to the district court regarding the proper framework within which to analyze this question. *See United States v. Brooke,* 4 F.3d 1480, 1488 (9th Cir.1993).

The Supreme Court has provided only limited guidance as to what constitutes a serious crime for the purpose of a finding of an important government interest under the first prong of *Sell:*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The Government's interest in bringing to trial an individual accused of a serious crime is important. That is so whether the offense is a serious crime against the person or a serious crime against property. In both instances the Government seeks to protect through application of the criminal law the basic need for security.

*8 *Sell,* 539 U.S. at 180.

No circuit court has interpreted *Sell* as allowing a categorical analysis of a crime's seriousness, such as a distinction between crimes *malum in se* and *malum prohibitum.*Similarly, we read *Sell's* reference to crimes against property and the person as describing only a subset of the crimes serious enough to support an important government interest in prosecution. A contrary reading would ignore the breadth of the Supreme Court's concern that the Government be able to bring an accused to trial, which it described as "fundamental to a scheme of ordered liberty and prerequisite to social justice and peace."*Id.* at 180 (citations and quotation marks omitted).*Sell* does not suggest that non-property, non-violent crimes, such as those arising under federal drug or immigration laws, are not fundamental to a scheme of ordered liberty. Instead, common to each of the appellate decisions interpreting *Sell* is a recognition that courts must consider the facts of individual cases in evaluating the government's interest in prosecution. Such relevant circumstances include the time a defendant has served while awaiting trial and the possibility of future civil confinement. *See id.* at 180.

Other circuit courts have refrained from specifying a length of sentence that renders a crime serious. The Fourth Circuit has held that "it is appropriate to focus on the maximum penalty authorized by statute in determining if a crime is 'serious' for involuntary medication purposes."*United States v. Evans,* 404 F.3d 227, 237 (4th Cir.2005). It reached this conclusion on the basis of the Supreme Court's Sixth Amendment jurisprudence with respect to the right to trial by jury.[FN8]The Fourth Circuit rejected the argument that it should focus on a defendant's probable guideline sentencing range,

concluding that such an approach would be unworkable because at the involuntary medication "stage in the proceedings, there is no way of accurately predicting what that range will be."*Id.* at 238.The Fourth Circuit did not specify what maximum punishment would render a crime "serious," but decided that it is "beyond dispute that the Government does have an important interest in trying a defendant charged with a felony carrying a maximum punishment of 10 years imprisonment."*Id.* The Second and Tenth Circuits also have refrained from establishing a generic test for seriousness, but, in contrast to the Fourth Circuit, have not rejected the sentencing guidelines as a guide to the seriousness of a crime. *See United States v. Valenzuela-Puentes,* 479 F.3d 1220, 1226 (10th Cir.2007) (reasoning that "[w]hether a crime is 'serious' relates to the possible penalty the defendant faces if convicted, as well as the nature or effect of the underlying conduct for which he was charged," and analyzing seriousness in light of both the statutory maximum and the likely guideline sentence); *Gomes,* 387 F.3d at 160 (describing "the seriousness of the crime and[the defendant's] perceived dangerousness to society [as] evident from the substantial sentence [the defendant] faces if convicted" and noting that the defendant "faces a possible statutory minimum of fifteen years' imprisonment"), *cert. denied,*543 U.S. 1128, 125 S.Ct. 1094, 160 L.Ed.2d 1081 (2005).

*9 [12] Although the sentencing guidelines no longer are mandatory, they are the best available predictor of the length of a defendant's incarceration. While the statutory maximum may be more readily ascertainable, any difficulty in estimating the likely guideline range exactly is an insufficient reason to ignore *Sell's* direction that courts should consider the specific circumstances of individual defendants in determining the seriousness of a crime. Accordingly, we disagree with the Fourth Circuit and conclude that the likely guideline range is the appropriate starting point for the analysis of a crime's seriousness. It is not, however, the only factor that should be considered. Because the sentencing guidelines do not reflect the full universe of relevant circumstances, two indictments alleging

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 170201 (C.A.9 (Cal.))
(Cite as: --- F.3d ----)

crimes with equal likely guideline ranges will not always be equally serious within the meaning of *Sell.*

[13] In the instant case, the district court did not indicate in its order the basis upon which it concluded that there is an important government interest at stake in prosecuting Defendant. However, it did state at the *Sell* hearing that it had considered both the current charge against Defendant and Defendant's criminal history. Specifically, the district court indicated that the Government's interest in prosecuting Defendant for a § 1326 violation-when taken in conjunction with other relevant factors such as Defendant's prior offenses, the predatory nature of those offenses, and the closeness in time of the prior offenses to the current prosecution-was sufficiently important to justify involuntary medication for the purpose of rendering Defendant competent for trial. In performing this fact-intensive inquiry, the district court likely approximated the analysis it would have performed had it used the sentencing guidelines as its starting point, and its ultimate conclusion was sound. Accordingly, we approve of the district court's conclusion in this respect and hold that, at least under some circumstances, a violation of § 1326 may constitute a "serious" crime sufficient to justify involuntary medication under *Sell.* We also agree with the district court that, at the time of the *Sell* hearing, this case presented such a circumstance. However, we recognize that in light of the additional time Defendant has served in custody during the pendency of this appeal, at least some of the relevant facts initially presented to the district court with respect to seriousness may require reevaluation. Whether this is the case, and what the outcome of such reevaluation should be, are questions we leave for the district court to address on remand.

[14] We also note the Government's suggestion to the district court that "dangerousness can be a factor ... in looking at whether [Defendant] should be forcibly medicated [under *Sell* ]." The district court did not accept or reject the Government's position explicitly, but rather concluded that it could consider dangerousness in the context of how a prior criminal history would affect the applicable guideline sentencing range. On remand, the district court should remain mindful of the Supreme Court's distinction between the purposes and requirements of involuntary medication to restore competency and involuntary medication to reduce dangerousness. It should take care to separate the *Sell* inquiry from the *Harper* dangerousness inquiry and not allow the inquiries to collapse into each other.

**V**

*10 Based upon the foregoing discussion, we vacate the district court's order permitting the Government to medicate Defendant involuntarily to render him competent for trial and remand for further proceedings consistent with this opinion.[FN6] **VACATED AND REMANDED WITH INSTRUCTIONS.**

FN* The Honorable Jeremy Fogel, United States District Judge for the Northern District of California, sitting by designation.

FN1. Defendant previously has been convicted of the following crimes: aggravated assault on a corrections officer in Arizona (twice); lewd and lascivious acts with a child under the age of fourteen, in violation of Cal.Penal Code § 288(a), for which he received a three-year custodial sentence; and misdemeanor annoying children and trespassing. Defendant was ordered removed from the United States by an Immigration Judge on August 1, 2003, and was removed on November 8, 2003.

FN2. The Tenth Circuit has held that when evidence of dangerousness exists, a court *must* inquire into dangerousness before undertaking the *Sell* inquiry. *See Morrison v. United States,* 415 F.3d 1180, 1186 (10th Cir.2005). However, it also has held that if there is no evidence of dangerousness to self or others, a court may proceed to the *Sell* inquiry without inquiring into danger-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 170201 (C.A.9 (Cal.))
**(Cite as: --- F.3d ----)**

ousness. *Valenzuela-Puentes,* 479 F.3d at 1224-25.

FN3. In light of the time elapsed since the hearing before the district court, the Government may have adopted a different position as to Defendant's dangerousness. Even if it takes the position that Defendant is not dangerous, the district court should inquire into the reasons for such a position.

FN4. The district court commented as follows in connection with its findings under the second *Sell* factor:

[A]s I indicated earlier, Dr. Wolfson's approach, to me, appears eminently reasonable and appropriate. To start with a second-generation medication, to see if there is improvement, if there is insight on the part of Mr. Hernandez, and then to gradually-or to at that point take inventory and see whether a different type of medication is necessary, or whether the medication prescribed by Dr. Wolfson is, in fact, working.

If it is not, I would then leave it to his discretion to determine in what manner and whether to more aggressively treat Mr. Hernandez, perhaps through the intramuscular approach, the injection approach, with the other more aggressive medications.

FN5. "Although the Court in *Sell* offered no guidance on how to determine the seriousness of an offense, the Supreme Court has described 'serious' crimes in other contexts. In *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), for example, the Supreme Court observed that the Sixth Amendment's right to trial by jury exists only in 'serious' criminal cases. *Id.* at 158, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491. It admonished that "the penalty *authorized* for a particular crime is of major relevance in determining whether it is serious."*Id.* at 159, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (emphasis added). In fact, it explicitly rejected [the] argument that the proper focus of whether a

crime is 'serious' for purposes of the Sixth Amendment right to trial is the *actual* 'length of punishment.' *Id.* at 162 n. 35, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491."*Evans,* 404 F.3d at 237 (4th Cir.2004) (emphasis in original).

FN6. We do not reach Defendant's argument that the Government did not show that the anti-psychotic drugs it would use are likely to render Defendant competent to stand trial or his argument that such drugs are inappropriate given his medical history.

C.A.9 (Cal.),2008.
U.S. v. Hernandez-Vasquez
--- F.3d ----, 2008 WL 170201 (C.A.9 (Cal.))

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.