UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | |
| JAMES A. AUSTIN, : | Criminal Case No. 06-368 (RJL/DAR) |
| : | |
| Defendant. : | |
| _____ : | |

**GOVERNMENT'S MOTION FOR RECUSAL
OF MAGISTRATE JUDGE DEBORAH A. ROBINSON**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits the following Motion for Recusal pursuant to Title 28, United States Code, Section 455(a). In support of this Motion, the United States relies on the following points and authorities and such other points and authorities as may be cited at any hearing on this issue:

**FACTUAL BACKGROUND**

1. On December 19, 2006, a grand jury returned an Indictment against the defendant, James Austin, charging him with threatening the Honorable John Ramsey Johnson on December 4, 2006, in violation of Title 18, United States Code, Section 115. At the time of the threat, Judge Johnson was presiding over the defendant's case in the Superior Court of the District of Columbia, 2006CF2021099, for allegedly threatening to burn down his mother's house.[1] Judge

---

[1] In 2002, the defendant was charged by Indictment with arson and other related offenses in Superior Court case 2002FEL006197, in which the Government alleged that the defendant set a trash can on fire that was positioned outside the door of his mother's house. The felony case was dismissed in 2005, and the defendant was civilly committed on April 14, 2006.

Johnson then recused himself.[2]

    2.  On December 20, 2006, the defendant was arrested on the federal charges and his case was assigned to the Honorable Richard J. Leon.  At the request of Judge Leon, and pursuant to 28 U.S.C. § 636(b)(1)(B), in October, 2007, up to and including February, 2008, this Court presided over the briefings, hearings, and oral argument on the Government's motion to involuntarily medicate the defendant pursuant to Sell v. United States, 529 U.S. 166 (2003) (hereinafter "Sell proceedings").  As of the filing of this motion, the Court has not yet submitted its findings of fact and recommendations to Judge Leon.

    3.  On April 10, 2008, the Court held a status hearing at the defendant's request upon learning that Judge Rigsby, the presiding judge in the defendant's Superior Court case, had ordered the defendant to St. Elizabeth's John Howard Pavilion for a psychiatric evaluation to determine his competency to stand trial in the Superior Court case, and that the March 31, 2008, report sent to Judge Rigsby by the Department of Mental Health stated that the defendant had been referred for involuntary medication.  As the Government's Sell motion had not been ruled upon, the purpose of the hearing was to determine the propriety of Judge Rigsby's Order, and, more specifically, whether the United States Attorney's Office had played any part in the hospital's decision to involuntarily medicate the defendant.

---

    [2]Upon Judge Johnson's recusal, the Honorable Robert I. Richter was assigned the defendant's Superior Court case.  Judge Richter transferred to a different calendar assignment on December 31, 2007, and the defendant's case was reassigned to the Honorable Robert R. Rigsby.  Judge Rigsby recently informed counsel in the Superior Court case that he would be recusing himself at the status hearing scheduled for April 23, 2008, due to a telephonic threat made to Judge Rigsby by the defendant on April 10, 2008.  Prior to that status hearing, the Government dismissed the Superior Court case upon confirming that the complaining witness, the defendant's mother, recently passed away.

4. After the case had been called but prior to the defendant's being brought out, the Court noted for the record that the defendant had recently called the Court on multiple occasions and that the Court had those calls transcribed and had provided them to counsel. (As the Government learned later, it was because of those calls and the previous threat to Judge Johnson that Deputy United States Marshall (DUSM) William Jessup, a Judicial Security Inspector from the U.S. Marshals Service, was also present in the courtroom during the hearing.) After the Court's initial comments, DUSM Douglas Tolliver then brought the defendant into the courtroom and sat him down. As soon as he did so, the defendant looked directly at the Court and stated loudly, "If I had a gun, I'd blow your fucking brains out."[3] The defendant was then escorted out of the courtroom and the Court took a recess.

5. After the recess, the hearing then took place without the defendant. As the Court noted at the time, defense counsel could not legitimately waive the defendant's presence as the defendant lacked the mental capacity at the time to provide informed consent to that action. At the hearing, the Government provided the Court and defense counsel with numerous uncontradicted documents from the Superior Court case that, the Government believes, conclusively showed both that the United States Attorney's Office did not request the involuntary medication, and that Judge Rigsby did not order it. As the Court was still concerned about the on-going parallel proceedings in District Court and Superior Court, and the

---

[3] The Government has not yet obtained a copy of the actual transcript from the hearing, but the undersigned Assistant wrote down the defendant's comment immediately upon hearing it, in quotes, and others present in the courtroom, to include DUSM Jessup, confirmed that was the substance of the threat and that it had been directed to the Court, rather than to anyone else in the courtroom. At the subsequent hearing held on April 14, 2008, defense counsel confirmed that the threat was directed to the Court as well.

Government had just learned that day that the complainant in the Superior Court case might have passed away, the Court scheduled another hearing for April 14, 2008, to give the Government time to confirm the complainant's death and, if the death was confirmed, to determine whether the Government would be dismissing the Superior Court case.

6. On April 14, 2008, after informing the Court that the Government had confirmed the complainant's death and that the Superior Court case was being dismissed, the Government then made an oral motion for the Court's recusal as a result of the threat made by the defendant, noting also that defense counsel could not waive the recusal issue for the currently-incompetent defendant. The Government also requested that the Court send the Sell record to Judge Leon without the Court's post-threat findings of fact and recommendations, thereby eliminating a potential claim by the defendant on appeal. Defense counsel objected, and the Court ordered further briefing on the recusal issue and on whether the Sell proceedings should be supplemented by judicial notice, over the Government's objection, that the defendant did not have an outburst during the Sell proceedings, but did have an outburst at the April 10, 2008, hearing after having been involuntarily medicated by the doctors at St. Elizabeth's hospital. The Government then requested that the Court not consider any briefings on the supplementation of the Sell proceedings until the recusal issue is resolved. At the conclusion of the hearing, the Court stayed any further consideration of the Sell proceedings pending resolution of the recusal issue.

## ARGUMENT

7. Pursuant to Title 28, United States Code, Section 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The standard is an objective one; "the judge's

own subjective perception of impropriety is not necessary to invoke the statute." United States v. Bayless, 201 F.3d 116, 126 (2nd Cir. 2000); see also Liteky v. United States, 510 U.S. 540, 553 n.2 (1994) (noting that under § 455(a), "[t]he judge does not have to be *subjectively* biased or prejudiced, so long as he *appears* to be so") (emphasis in original).  As the courts have noted, "[u]nder § 455(a), recusal is not limited to cases of actual bias; rather, the statute requires that a judge recuse himself whenever an objective, informed observer could reasonably question the judge's impartiality, regardless of whether he is actually partial or biased."[4] Bayless, 201 F.3d at 126; see also United States v. Holland, __ F.3d __, 2008 WL 696903, *3 (9th Cir. 2008); In re United States, 441 F.3d, 44, 56-57 (1st Cir.), cert. denied, 127 S. Ct. 288 (2006); United States v. Nettles, 394 F.3d 1001, 1002-03 (7th Cir. 2005); United States v. Greenspan, 26 F.3d 1001, 1005 (10th Cir. 1994).  Furthermore, "[w]hile recognizing that the challenged judge enjoys a margin of discretion, . . . doubts ordinarily ought to be resolved in favor of recusal." In re United States, 441 F.3d at 56-57 (internal quotations omitted).

  8.  Where a judge has been threatened by a defendant, the courts focus on, among other things, whether the threat appeared genuine.  As noted by the court in Nettles, "[t]he cases . . . that have addressed the issue of recusal based on threats have held that a threat to a judge that appears to be genuine and not just motivated by a desire to recuse the judge requires recusal." Nettles, 394 F.3d at 1002 (internal citations omitted); see also Greenspan, 26 F.3d at 1006

---

[4]Contrary to defense counsel's claim at the April 14, 2008, hearing, the Government is not suggesting that the Court has personal bias or prejudice based on the threat made by the defendant, and thus we are not moving for recusal based on 28 U.S.C. § 455(b).  As we are not alleging personal bias or prejudice but rather that the circumstances create an appearance of impropriety under 28 U.S.C. § 455(a), the affidavit requirement cited by defense counsel, 28 U.S.C. § 144, is also inapplicable.  See Bayless, 201 F.3d at 126 & n.1.

(holding that judge should have recused himself after learning from FBI of threat made by defendant where there was nothing to suggest that threat was ruse, ploy, an attempt to manipulate the system to obtain a different judge or to delay the proceedings, or for any other vexatious or frivolous purpose).  Other factors to consider may include the defendant's capacity to carry out the theat, including any concrete steps taken, history of violence, and success in carrying out other threats; 2) the defendant's demeanor and the context of the threat, including whether he appeared to be serious or joking, and whether there were prior dealings between the court and the defendant; and 3) what was the perceived purpose of the threat, including whether the threat was made in open court as opposed to conveyed to the judge by law enforcement officers, and whether the threat was an attempt to manipulate the system to force recusal.  Holland, __F.3d __, 2008 WL 696903 at *4.  Finally, as also noted by the court in Holland:

> Disqualification is necessarily fact-driven and may turn on the subtleties in the particular case.  Consequently, 'the analysis of a particular section 455(a) claim must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue.'

Id. at *3 (quoting United States v. Bremers, 195 F.3d 221, 226 (5th Cir. 1999)).

9.  In this case, an objective, informed observer would clearly question the Court's ability to be impartial.  It does not matter whether the Court could *actually* be impartial as it is the appearance of impropriety that is at issue.  Nettles 394 F.3d at 1002-03.  Here, after numerous phone messages left for the Court by the defendant; threats made by the defendant to other judges, one of whom is the complainant in this threats case; and a criminal history that includes arrests for both threatening to burn his mother's house down and actually attempting to do so, the defendant, in an angry tone, said in open court that "If I had a gun, I'd blow your fucking

head off." This was not a ruse, or an attempt to have a new judge assigned to the case, but rather a genuine threat and the defendant's current inability to carry out the threat does not make it less so.

10. This is not a case in which the defendant's threat can or should be considered mere hyperbole. As the Government informed the Court at the hearing, in 2002, the defendant was alleged to have actually placed a burning trash can next to his mother's door, and in the 2006 Superior Court threats case, he was alleged to have threatened to do so yet again. Thus, this is a situation, known to the Court, where the defendant has actually attempted to do harm to people he has also threatened.

11. Moreover, this case is distinguishable from cases such as Holland in which a defendant's recusal request was denied upon the court's finding that the defendant was attempting to manipulate the system by threatening one judge so another would be assigned. See Holland, ___ F.3d ___, 2008 WL 696903, at *1 (holding that court's refusal to *sua sponte* recuse himself after telephonic threat by defendant not error where court found attempt by defendant to manipulate system). There is no evidence to suggest that the defendant was attempting to manipulate the system in this case. Although the defendant's Superior Court case was transferred from Judge Johnson after the defendant threatened to him, he was also charged with a federal offense for making that threat and his Superior Court case remained active until the death of the complainant in that case. Thus, it is unlikely that he would employ that maneuver a second time if his intent was only to have his case transferred, and nor has defense counsel or the Court suggested such motive. Rather, defense counsel twice explained that the defendant was "mad" at his circumstances and that caused him to lash out. That defense counsel provides an

explanation does not make the defendant's threat appear any less genuine, however, and where that is the situation -- even where the *actual* ability or intention to carry out the threat at the time is nil -- recusal is required regardless of whether the threatened judge would be prejudiced because "[t]he issue is appearances." Nettles 394 F.3d at 1002-03.

12. A further consideration is that, while a determination has not yet been made as to whether the defendant will be charged with threatening this Court -- thus making the Court the victim and eyewitness in a criminal case against the defendant -- at a minimum, if the defendant regains competence and stands trial for threatening Judge Johnson, the defendant's threats to both Judge Rigsby and this Court could potentially be admissible as evidence pursuant to Federal Rule of Evidence 404(b). The defendant used almost identical words in his threats to this Court, Judge Johnson, and Judge Rigsby, and the threats to this Court and Judge Rigsby occurred on the same day, separated by little more than an hour.

13. Finally, while a balancing test is not applicable to this situation, the Government further notes that the entire record of the Sell proceeding, including the extensive written briefings, the hearings, and the oral arguments can be submitted to Judge Leon for his independent determination of the merits of the motion without this Court's making any post-threat findings of fact and recommendations. Proceeding in this manner preserves all the time and attention that the Court and the parties put into the Sell proceedings by eliminating the substantial risk of a later claim by the defendant that the Court erred in continuing to handle this matter after having been threatened by the defendant. If Judge Leon finds that he needs further information before making a decision, he can order the parties to provide it. Indeed, Judge Leon has *de novo* review over the proceedings pursuant to 28 U.S.C. § 636(b)(1)(C).

WHEREFORE, for the above reasons, the Government respectfully requests that the Court recuse itself from any further participation in this matter, and that the record of the <u>Sell</u> hearing be submitted to Judge Leon without this Court's findings and recommendation.

> Respectfully submitted,
> JEFFREY A. TAYLOR
> United States Attorney

BY: _____/s/_____
JEAN W. SEXTON
Assistant United States Attorney
NJ Bar No. 02122-1995
555 4th St., N.W. Room 4235
Washington, D.C. 20530
(202) 305-1419
Jean.Sexton@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES A. AUSTIN, | : | Criminal Case No. 06-368 (RJL/DAR) |
| | : | |
| Defendant. | : | |
| _____ | : | |

**ORDER**

Based upon a finding of good cause shown, following consideration of the Government's Motion for Recusal and the entire record herein, it is:

ORDERED that Magistrate Judge Deborah A. Robinson hereby recuses herself from any further participation in this matter, and

ORDERED that the record of the <u>Sell</u> hearing in this matter be submitted to District Court Judge Richard J. Leon without the findings and recommendation of Magistrate Judge Deborah A. Robinson.

_____
DEBORAH A. ROBINSON
United States Magistrate Judge


copies to:

Jean Sexton
Assistant United States Attorney
Federal Major Crimes Section
555 4th Street, N.W.
Washington, D.C. 20530

Jonathan Jeffress, Esq.
Assistant Federal Public Defender
Federal Public Defender for the District of Columbia
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004