UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v.                                )<br>)<br>)<br>) Criminal Case No. 06-368 (RJL)<br>JAMES A. AUSTIN,             )<br>)<br>Defendant.                   )<br>)<br>) | **FILED**<br>APR 0 6 2009<br>NANCY MAYER WHITTINGTON, CLERK<br>U.S. DISTRICT COURT |

MEMORANDUM OPINION
(April 3rd, 2009)

The Government asks this Court to order the involuntary medication of defendant James A. Austin ("defendant" or "Austin"), who suffers from mental illness, to render him competent to stand trial. The issue before the Court is whether the Government's interest in prosecution sufficiently outweighs the defendant's right to reject medical treatment to warrant the issuance of such an order. Because the Government has failed to show that the administration of antipsychotic drugs is substantially likely to return the defendant to competency, this case does not fall within the "limited circumstances" established by the Supreme Court in *Sell v. United States*, 539 U.S. 166, 169 (2003), that justify involuntary medication. Accordingly, the Government's request is DENIED.

## BACKGROUND

Austin, who is 56 years old, has struggled with mental illness for much of his life. Gov't Ex. 1, Psychological Report at 7, July 31, 2007. He has been diagnosed with a variety of similar disorders, including schizophrenia, schizo-affective disorder, and delusional disorder. *Id.* at 17. For the past twenty-three years, he has been either incarcerated or committed to mental hospitals for inpatient treatment. *Id.* at 6. Psychologists have "routinely" found him incompetent to stand trial since 2002. *Id.* at 7.

In December 2006, Austin allegedly threatened to assault and murder D.C. Superior Court Judge John Ramsey Johnson. Indictment, Dec. 19, 2006. Austin made the threats by phone *while* undergoing treatment at St. Elizabeth's Hospital in Washington, D.C.[1] Def. Ex. 11, Discharge Summ. at 2, Jan. 30, 2007. At the time of the threats, doctors at St. Elizabeth's were involuntarily medicating defendant, which did *not* alter his psychosis symptoms. *Id.* at 4.

Following defendant's arrest, Magistrate Judge Alan Kay committed defendant to the custody of the Federal Bureau of Prisons for a competency evaluation. Order, Dec. 22, 2006. Dr. William Ryan, a staff psychologist at the Metropolitan Correctional Center in New York, administered the evaluation and recommended this Court find defendant incompetent to stand trial. The Court concurred with Dr. Ryan's opinion and referred defendant to the United States

---

[1] Austin was committed to St. Elizabeth's for a mental health evaluation after being charged with harassment, destruction of property, second degree theft, and arson. Def. Ex. 11, at 2.

Medical Center for Federal Prisoners ("USMCFP") in Springfield, Missouri for a mental health evaluation and competency restoration. Gov't Ex. 1, at 1. Doctors at USMCFP attempted to restore defendant to competency through non-pharmacological means. *Id.* at 26. They were not successful and the defendant has refused to voluntarily take antipsychotic medication. *Id.* at 13.

Currently, defendant remains incompetent to stand trial. *Id.* at 26. Dr. Robert G. Sarrazin, chief psychologist of USMCFP, recommended that the Court conduct a hearing under *Sell* to determine if defendant could be involuntary medicated. *Id.* Magistrate Judge Deborah Robinson held those hearings on October 26, 2007, October 30, 2007, January 29, 2008, January 30, 2008, and February 11, 2008. Before she could issue her findings of fact and recommendation, however, defendant made threats against her in open court, and she was recused from the case. Order, May 13, 2008. This Court held further *Sell* proceedings on June 23, 2008. Based on the evidence presented to Magistrate Judge Robinson and to this Court, I find, for the following reasons, that the Government has not shown, by clear and convincing evidence, that Austin should be involuntarily medicated under *Sell*.

## DISCUSSION

In *Sell*, the Supreme Court held that, in limited circumstances, the Fifth Amendment permits the administration of antipsychotic medication against a defendant's will to render the defendant competent to stand trial. 539 U.S. at 169. However, the Government can administer those drugs only if: 1) important

3

governmental interests are at stake; 2) involuntary medication will significantly further those interests; 3) involuntary medication is necessary to further those interests; and 4) administering the drugs is medically appropriate. *Id.* at 180–81.[2]

After evaluating these factors, the Court finds that the Government has not shown each of these criteria by clear and convincing evidence.[3] While the government has demonstrated important governmental interests at stake (*i.e.*, prosecuting threatening conduct directed towards judicial officers), that interest is firmly outweighed by the unlikelihood that involuntary medication will "significantly further those interests." *Id.* at 181. Specifically, the Government has not shown that there is a substantial likelihood the defendant will be restored to competency. Therefore, under *Sell*, involuntary medication is inappropriate. How so?

## I. Importance of the Government's Interest

To render a defendant competent to stand trial through involuntary medication, the Government must have an "important" interest at stake. *Id.* at 180. To evaluate the nature of the Government's interest, the court must consider:

---

[2] Notably, the Supreme Court emphasized that a district court should "consider whether forced administration of drugs can be justified on . . . alternate grounds *before* turning to the trial competence question." *Sell v. United States*, 539 U.S. 166, 182 (2003); *see also United States v. Morrison*, 415 F.3d 1180, 1186 (10th Cir. 2005). Dr. Sarrazin concluded that defendant "could not be involuntarily medicated under the *Harper* criteria." Gov't Ex. 1, at 14. The parties do not challenge this finding. It is therefore appropriate to consider whether the involuntary medication proposed here satisfies the *Sell* criteria.

[3] While the D.C. Circuit has not addressed the standard of proof applicable to a *Sell* proceeding, other circuits have adopted a clear and convincing evidence standard for each of the *Sell* criteria. *See United States v. Valenzuela-Puentes*, 479 F.3d 1220, 1224 (10th Cir. 2007) ("Given 'the vital constitutional liberty at stake' . . . the district court must find all necessary facts by 'clear and convincing evidence.'") (quoting *United States v. Bradley*, 417 F.3d 1107, 1114 (10th Cir. 2005)); *United States v. Gomes*, 387 F.3d 157, 160 (2d Cir. 2004) ("[T]he relevant findings must be supported by clear and convincing evidence."). This Court finds their reasoning to be sound and uses the same standard here.

4

1) whether the defendant is charged with a serious crime; and 2) if any special circumstances, such as the length of time defendant has already been confined, undermine the importance of the Government's interest in prosecution. *Id.*

Although the severity of the offense in this case is – to say the least – obvious, the possible sentence for a crime is also an important factor in gauging its relative seriousness as an offense. *See United States v. Hernandez-Vasquez*, 513 F.3d 908, 918-19 (9th Cir. 2008); *United States v. Valenzuela-Puentes*, 479 F.3d 1220, 1226 (10th Cir. 2007). Here, both the maximum sentence (ten years) and the proposed sentence under the federal guidelines (at a maximum, forty-one months)[4] indicate defendant's crime is a serious one. Moreover, the Fourth Circuit has held that "threatening to murder a federal judge . . . is 'serious' under any reasonable standard." *United States v. Evans*, 404 F.3d 227, 238 (4th Cir. 2005) (internal citations omitted). Surely, the Government has demonstrated an important interest in trying an individual charged with this offense.

Yet that interest is, to some extent, undermined by the length of time defendant has already been confined. *Sell*, 539 U.S. at 180. Defendant was arrested on December 20, 2006. As of the date of this Opinion, he has been committed for twenty-seven months. If defendant were restored to competency – a process which can take up to four months, *if successful*, Tr. 1/29/08 at 68:10-12 – tried, convicted, and sentenced, he would already have served a substantial

---

[4] The Government and defendant disagree as to the specific calculations under the federal sentencing guidelines. For the purposes of this opinion, the Court refers to the lengthier guidelines range provided by the Government – 33 to 41 months. Tr. 7/29/08 at 5:11-16.

5

portion of a sentence within the federal guidelines range. Under these circumstances, the importance of the Government's interest, while not eradicated, is certainly diminished.

## II. Probability of Restoration to Competency

Although the Government may have a strong interest in prosecuting Austin, it fails to proffer clear and convincing evidence that "involuntary medication will significantly further" that interest. *Sell*, 539 U.S. at 181. Involuntary medication significantly furthers the government interest if: 1) the administration of drugs is "*substantially likely* to render defendant competent to stand trial," and 2) the drugs are substantially unlikely to have side effects that would interfere significantly with the defendant's ability to "assist counsel in conducting a trial defense." *Id.* at 181 (emphasis added). Expert testimony regarding the likelihood of success must reflect an individualized assessment of the patient's medical history and mental illness. *See Evans*, 404 F.3d at 241 (expert testimony that did not consider "all of the particular characteristics of the individual defendant" was insufficient to sustain government's burden). Here, unfortunately for the Government, the expert testimony does not meet that standard.

During the *Sell* hearing, Dr. Robert G. Sarrazin, the Government's chief expert witness,[5] testified that he did not review all of Austin's medical records. Dr. Sarrazin mainly relied upon a discharge summary from St. Elizabeth's

---

[5] The Government also proffered the testimony of Dr. Chad Brinkley, a clinical psychologist at USMCFP, but it has since conceded that Dr. Brinkley did not have sufficient expertise to address the question of whether anti-psychotic medicine would be substantially likely to restore Austin to competency. Tr. 2/11/08 at 7:22–24.

Hospital in 2003 in recommending involuntary medication, but he admitted to having only "likely skimmed" the records documenting Austin's progress through competency restoration treatment at the hospital. Tr. 1/30/08 at 11:8-15. Indeed, the discharge summary provides few specifics about Austin's restoration to competency, noting only that it occurred after Austin began taking the medication. Def. Ex. 4, Discharge Summ., June 26, 2003. As a result, Dr. Sarrazin could *not* testify with certainty that antipsychotic medication was responsible for Austin's restoration to competency in 2003. Tr. 1/29/08 at 58:6-23. As such, Dr. Sarrazin's cursory review of Austin's records is insufficient to show, by clear and convincing evidence, that Austin will likely be restored to competency.

To the contrary, Austin's medical history indicates that a restoration to competency is unlikely. He has a lengthy history of civil and criminal commitment resulting from his mental illness, during which he has repeatedly been adjudicated incompetent to stand trial. Unfortunately, as time passes, Austin becomes less and less likely to respond to medication. Tr. 1/30/08 at 30:22-31:20. Indeed, he has never been adjudicated to be competent after undergoing involuntary medication.[6] And perhaps most tellingly, Austin committed the crime with which he is charged *while* involuntarily medicated and participating in a competency restoration program. Def. Ex. 11, at 4.

Because the Government has failed to show that involuntary medication is

---

[6] Although Austin was deemed competent in 2003 by the doctor completing his discharge, no court of law has ever found Austin competent to stand trial after undergoing competency restoration treatment. Def. Ex. 4, Discharge Summ., 2003.

substantially likely to restore Austin to competency, the Government cannot administer antipsychotic medication to defendant against his will.[7]

## CONCLUSION

Thus, for all of the foregoing reasons, the Government's request to involuntarily medicate defendant James Austin is DENIED.

RICHARD J. LEON
United States District Judge

---

[7] The final prongs of the *Sell* analysis require this Court to consider whether involuntary medication is necessary to further the government interests, and whether the treatment is "medically appropriate." *Sell*, 539 U.S at 181. However, because the government has failed to proffer sufficient evidence that medication is likely to restore Austin to competency, consideration of these factors is unnecessary.